**<u>EXHIBIT B</u>**

**GUARANTY**

EAST\188868734.6

# JOINT AND SEVERAL GUARANTY

dated as of July 1, 2019

among

**TAYLOR WOODS**
**HOWARD WU**
and
**URBAN COMMONS, LLC**,
as Guarantors

and

**MIRAE ASSET SECURITIES & INVESTMENTS (USA), LLC**,
as Administrative Agent

SINGAPORE/#5472.3

## JOINT AND SEVERAL GUARANTY

**THIS JOINT AND SEVERAL GUARANTY**, dated as of July 1, 2019 (this "Guaranty", is entered into among (i **TAYLOR WOODS**, an individual with identification number 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, (ii **HOWARD WU**, an individual with identification number 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 and (iii **URBAN COMMONS, LLC**, a Delaware limited liability company (each of (i, (ii and (iii, a "Guarantor" and collectively referred to herein as "Guarantors", in favor of **MIRAE ASSET SECURITIES & INVESTMENTS (USA), LLC**, as administrative agent (in such capacity, the "Administrative Agent" for itself and the Lenders.

W I T N E S S E T H:

**WHEREAS**, the Lenders have severally agreed to extend credit to USA LendCo Holdings, LLC, a Delaware limited liability company (the "**Borrower**" pursuant to the Credit Agreement.  The Guarantors are engaged in interrelated businesses, and each Guarantor will derive substantial direct and indirect benefit from extensions of credit under the Credit Agreement.  It is a condition precedent to each Lender's obligation to extend credit under the Credit Agreement that each Guarantor shall have executed and delivered this Guaranty in favor of the Administrative Agent.

**WHEREAS**, it is a condition precedent under the Credit Agreement that Guarantors deliver to Administrative Agent a joint and several guaranty in favor of Administrative Agent with respect to the faithful performance by the Borrower and other Loan Parties of the Guaranteed Obligations (as defined below under the Credit Agreement and due and punctual payment of all amounts payable from time to time by the Borrower and other Loan Parties with respect to the Guaranteed Obligations; and

**WHEREAS**, each Guarantor has determined that it is in its interests that this Guaranty be given to Administrative Agent.

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and to induce Guaranteed Parties to enter into the Credit Agreement and other Loan Documents to make the Loans to Borrower, each Guarantor agrees as follows:

**Section 1.**

(i) Unless otherwise defined herein, terms defined in the Credit Agreement and used herein shall have the meanings given to them in the Credit Agreement.  The term "including" is not limiting and means "including without limitation."

(ii When used herein the following terms shall have the following meanings:

"BAML Subordination Agreement" means the subordination agreement dated May 24, 2019 between the Company, Bank of America, N.A. and Eht Us1, Inc.

"Credit Agreement" means the credit agreement dated as of June 28, 2019, between, amongst others, the Borrower and the Administrative Agent.

[Joint and Several Guaranty]

"Guaranteed Parties" means each of the Administrative Agent, Lenders and each of their respective successors and assigns.

"Tangible Net Worth" means, as at any date for any Person, the sum for such Person and its Subsidiaries (determined on a consolidated basis without duplication in accordance with GAAP) and based on its most recent annual financial statements, of the following:

(a) the amount of capital stock, plus

(b) the amount of surplus and retained earnings (or, in the case of a surplus or retained earnings deficit, minus the amount of such deficit), plus

(c) the carrying value of any unsecured subordinated debt of such Person owed to a Guarantor, minus

(d) the sum of (i) the cost of treasury shares, (ii) the book value of all assets which should be classified as intangibles, including goodwill, minority interests, research and development costs, trademarks, trade names, copyrights, patents and franchises and (iii) unamortized debt discount, in each case, to the extent not taken into account in the calculation of (a), (b) or (c) above.

**Section 2.** Each Guarantor hereby jointly, severally, absolutely, irrevocably and unconditionally guarantees to Administrative Agent, its successors and assigns, as primary obligors and not merely as surety, the due and faithful payment and performance by each Loan Party (other than itself) of the following obligations ("**Guaranteed Obligations**"):

(i) the prompt payment when due (whether by acceleration or otherwise) of all sums, indebtedness, obligations and liabilities of the Loan Parties, whether now existing or hereafter incurred, arising solely out of or in connection with the Credit Agreement or any other Loan Document;

(ii) any and all actual and documented expenses which may be paid or incurred by any Guaranteed Party in collecting any or all of the Guaranteed Obligations and/or in enforcing any of its rights hereunder, including without limitation, the payment of any stamp or similar duties, reasonable attorneys' fees, and other costs of collection; and

(iii) the due and punctual performance and observance by each Loan Party.

**Section 3.** If any Loan Party shall fail to make payment of any or all sums when due to any Person under any Loan Document, Guarantors, as primary obligors, shall forthwith pay to such Guaranteed Party or to its order the full amount due and payable (by acceleration or otherwise) in the manner required of any Loan Party by such sentences thereunder. All such payments shall be made without deductions, withholdings, or set-off, and shall be final and free from any claims or counterclaims of any Guarantor or Loan Party against any Person.

[Joint and Several Guaranty]

**Section 4.** The obligations of each Guarantor under this Guaranty shall be joint and several, continuing, absolute and unconditional under any and all circumstances and shall be paid by Guarantors regardless of (a) the validity, regularity, legality or enforceability of the Credit Agreement or any other Loan Documents, any of the Guaranteed Obligations or any collateral security or other guaranty therefore at any time or from time to time held by any Person; (b) any defense, offset or counterclaim which may at any time be available to or be asserted by any Loan Party or any Guarantor against any Person; or (c) any other event or circumstance whatsoever which may constitute, or might reasonably be construed to constitute, an equitable or legal discharge of a surety or a guarantor, it being the purpose and intent of Guarantors that this Guaranty and Guarantors' obligations hereunder shall remain in full force and effect and be binding upon Guarantors and their successors until the Guaranteed Obligations shall have been satisfied by payment and/or performance in full.

**Section 5.** Each Guarantor waives diligence, presentment, protest, demand for payment and/or notice of default, non-payment or non-performance to or upon any Loan Party or any Guarantor with respect to the Guaranteed Obligations. Each Guarantor waives any right to require any Person to marshal assets in favor of any Loan Party or any Guarantor or any other Person.

**Section 6.** Each Guarantor consents that, without the necessity of any reservation of rights against it and without notice to or further assent by it (a) the Guaranteed Obligations and liabilities of any Loan Party or any Guarantor and any other Person(s) for or upon any of the Guaranteed Obligations, or any collateral security or guaranty therefor or right of offset with respect thereto, may, from time to time, in whole or in part, be rescinded, renewed, extended, settled, surrendered, modified, accelerated, subordinated, waived, compromised, supplemented, terminated, sold, exchanged or released by a Guaranteed Party; (b) any and all collateral security at any time held by a Guaranteed Party for payment of the Guaranteed Obligations may be sold, exchanged or released, all without notice to or further assent by any Guarantor, who will remain bound hereunder, subject to the provisions contained in the remaining Loan Documents in relation to the sale, exchange or release of collateral security, notwithstanding any such rescission, renewal, extension, settlement, surrender, modification, acceleration, subordination, waiver, compromise, supplement, termination, sale or exchange or release; and (c) the covenants and agreements of the Borrower contained in the Credit Agreement may at any time be amended, modified, supplemented or terminated in whole or in part; all as Guaranteed Parties may deem advisable from time to time without impairing, abridging, releasing or affecting the obligations of Guarantors hereunder.

**Section 7.** No change in the name, ownership or organization of any Loan Party or any Guarantor shall in any way affect the liability of any Guarantor under this Guaranty, and all of the Guaranteed Obligations owed by any Loan Party or any Guarantor pursuant to the terms of the Credit Agreement and the other Loan Documents shall be guaranteed by this Guaranty notwithstanding that the incurring of such Guaranteed Obligations shall be in excess of the power or authority of any Loan Party or any Guarantor or shall be in any way irregular, defective, or informal.

**Section 8.** No Guarantor shall be entitled to prorate its obligations herein set forth or to be subrogated to any of the rights of any Guaranteed Party against any other guarantor or any

3

[Joint and Several Guaranty]

Loan Party or the other Guarantor or any collateral security held by any Guaranteed Party for the payment of the Guaranteed Obligations until the indefeasible payment in full of the Guaranteed Obligations.  Each Guarantor expressly waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution and any other claim which it may now or hereafter have against any Loan Party or the other Guarantor or any other person directly or contingently liable for the Guaranteed Obligations, or against or with respect to any Loan Party's or the other Guarantor's property (including, without limitation, property collateralizing the Guaranteed Obligations), arising from the existence or performance of this Guaranty.  The undertakings in this Section 8 are solely for the benefit of Guaranteed Parties and their successors and assigns.

Section 9.    All rights and remedies of Administrative Agent (on behalf of itself and/or Lenders) hereunder and under the Credit Agreement and the other Loan Documents shall be cumulative and may be exercised singly or concurrently.

Section 10.    Each Guarantor hereby irrevocably and unconditionally waives:  (a) any and all notice of the acceptance of this Guaranty; (b) any and all notice of the creation, renewal, extension or accrual of any of the Guaranteed Obligations and notice of or proof of the reliance by Guaranteed Parties upon this Guaranty; (c) all notices which may be required by statute, rule of law or otherwise to preserve any rights against any Guarantor; (d) any requirement of diligence; (e) presentment, demand, protest, notice of default or nonpayment; and (f) any and all defenses to payment hereunder, except the defense of payment already made.

Section 11.    Each Guarantor hereby waives and relinquishes any duty on the part of any Guaranteed Party (should any such duty exist) to disclose to any Guarantor any matter, fact or thing related to the business, operations or condition (financial or otherwise) of any Loan Party or the other Guarantor or their affiliates or subsidiaries or their properties, whether now known or hereafter known by any Guaranteed Party during the life of this Guaranty.

Section 12.    When making any demand hereunder against any Guarantor, any Guaranteed Party may, but shall be under no obligation to, make a similar demand on the other Guarantor any other guarantor, and any failure by any Guaranteed Party to make such demand or to collect any payments from any such other guarantor or any release of such other guarantor shall not relieve any Guarantor of its obligations and liabilities hereunder, and shall not impair or affect the rights and remedies, express or implied, or as a matter of law, of any Guaranteed Party against any Guarantor.  For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings.

Section 13.    Each Guarantor covenants and agrees with the Guaranteed Parties as follows.

(i)    Credit Agreement.  Each Guarantor covenants that it will, and, if necessary, will cause or enable each Loan Party to, fully comply with each of the covenants and other agreements set forth in the Credit Agreement.

(ii)    Authorizations.  Each Guarantor covenants that it will obtain and maintain all the authorizations, registrations, licenses, verifications, accounts, and approvals, and perform

4

all necessary actions, to enable each Loan Party to observe and perform the terms and conditions of this Guaranty.

(iii) <u>Cooperation</u>. Each Guarantor covenants that it will not take any action which would prevent or interfere with the observance and performance by each Loan Party of any covenant, agreement or obligation of each Loan Party set forth in the Loan Documents, or any other agreement referred to therein.

(iv) <u>Pari Passu.</u> Each Guarantor represents and warrants and covenants to ensure that its payment obligations hereunder shall at all times rank either pari passu in right of payment with or senior to all of its other present and future unsecured indebtedness.

(v) <u>Further Assurance</u>. Each Guarantor covenants that it will execute such further documents and take all such actions as may reasonably be required by the Guaranteed Parties to obtain the full rights and benefits intended to be created by this Guaranty.

(vi) <u>Charged Shares</u>. Each Guarantor covenants that it will not, and will procure that the REIT Chargors will not, sell, assign, pledge, mortgage, hypothecate, transfer or otherwise encumber any of the REIT Charged Shares.

(vii) <u>BAML Accordion Facility</u>. Each Guarantor covenants that (a) it will procure that any proceeds received by the Borrower pursuant to Section 2(iv) of the BAML Subordination Agreement shall be promptly applied by the Borrower towards mandatory prepayment, in part or in whole of the Loans under the Credit Agreement and the Notes in accordance with Section 6.1.2 of the Credit Agreement and (b) it will use commercially reasonable endeavours to procure (i) an increase in commitments pursuant to Section 2.16 of the BAML Accordion Facility and (ii) sufficient funds are drawn under the BAML Accordion Facility on or by the Loan Maturity Date to enable the Loan to be timely satisfied and discharged in full in accordance with Section 6.3 of the Credit Agreement.

(viii) <u>Minimum net worth</u>. Each Guarantor covenants that it will not permit the aggregate Tangible Net Worth of the Guarantors' to fall below US$25,000,000 (25 million dollars), and represents that it satisfies such minimum Tangible Net Worth. Each Guarantor shall provide, from time to time promptly following request from the Administrative Agent, and in any event within 30 days after the end of each Fiscal Quarter, consolidated and consolidating balance sheets of the Guarantors as of the end of such Fiscal Quarter, together with consolidated and consolidating statements of income or operations, retained earnings, shareholders' equity and cash flows.

Section 14.    This Guaranty shall continue to be effective or be reinstated as the case may be, as to each Guarantor, if at any time payment, or any part hereof, of any of the Guaranteed Obligations is rescinded or must be restored or returned by any Guaranteed Party upon the insolvency, bankruptcy, liquidation or reorganization of any Loan Party or the other Guarantor, or otherwise, all as though payment had not been made.

Section 15.    No Guaranteed Party shall have any duty to protect, secure, perfect or insure any collateral security at any time securing the payment of the Guaranteed Obligations. This is a guaranty of performance and payment and not merely of collection. Each Guarantor

hereby waives any requirement that any Guaranteed Party make any demand, commence suit or exercise any other right or remedy under the Credit Agreement and the other Loan Documents prior to enforcing its rights against any Guarantor hereunder.

**Section 16.** The Guaranteed Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guaranty, and all dealings between any Loan Party or any Guarantor and any Guaranteed Parties shall likewise be conclusively presumed to have been had or consummated in reliance upon this Guaranty. Each Guarantor acknowledges receipt of a copy of the Credit Agreement.

**Section 17.** Each Guarantor shall from time to time, at its own cost and expense, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by applicable law or reasonably requested by Administrative Agent or any Guaranteed Party to establish, maintain and protect the respective rights and remedies of such party and to carry out the intent and purpose of this Guaranty.

**Section 18.** Each Guarantor hereby further represents, warrants and covenants that:

(i) In respect of Urban Commons, LLC only, it is a limited liability company duly formed, validly existing and in good standing under the laws of Delaware and is duly qualified to do business in each jurisdiction where such qualification is legally required and in each jurisdiction where the failure to qualify would affect the enforceability of this Guaranty or otherwise adversely affect the such Guarantor's ability to perform its obligations under this Guaranty.

(ii) It has full power, authority and legal right to execute and deliver this Guaranty and to perform its obligations hereunder.

(iii) No consent of any other Person (including any stockholders, partners trustees or holders of indebtedness), and no consent, license, approval or authorization of, exemption by, or registration or declaration with, any governmental body, authority, bureau or agency is required in connection with the execution, delivery or performance by either Guarantor of this Guaranty.

(iv) The execution, delivery of and performance by either Guarantor of this Guaranty do not and will not violate any provision of any applicable law or regulation or of any judgment, award, order, writ or decree of any court or governmental instrumentality, will not violate any provision of the organizational documents or bylaws of such Guarantor and will not violate any provision of or cause a default under any mortgage, indenture, contract, agreement or other undertaking to which such Guarantor is a party or which purports to be binding upon such Guarantor or upon any of its assets, and will not result in the creation or imposition of any Lien on any of the assets of such Guarantor.

(v) Neither Guarantor is in default, and no event or condition exists which after the giving of notice or lapse of time or both would constitute an Event of Default, under this Guaranty or under any mortgage, indenture, contract, agreement, judgment or other undertaking to which either Guarantor is a party or upon any of its assets, except for any such default event or condition which, individually or in the aggregate, would not affect such Guarantor's ability to

perform its obligations under this Guaranty or any such mortgage, indenture, contract, agreement, judgment or other undertaking to which it is a party.

(vi) This Guaranty has been duly authorized, executed and delivered by each Guarantor and constitutes a legal, valid and binding obligation of each Guarantor, enforceable in accordance with its respective terms.

(vii) There is no action, suit, investigation or proceeding (whether or not purportedly on behalf of either Guarantor) pending or, to its knowledge, threatened against or affecting such Guarantor or any of its assets which, if adversely determined, could have a material adverse effect upon the transaction contemplated by this Guaranty or a material adverse effect on the business, operations or financial condition of such Guarantor.

(viii) Each Guarantor has filed all Federal, state and local income tax returns that are required to be filed, if any, and has paid all taxes and all assessments received by it to the extent that such taxes and assessments have become due, if any, and neither Guarantor has any knowledge of any actual or proposed deficiency or additional assessment in connection therewith.  The charges, accruals and reserves on the books of each Guarantor in respect of Federal, state and local taxes for all open years, and for the current fiscal year, make adequate provision for all unpaid tax liabilities for such periods.

(ix) Neither Guarantor is or is required to be registered as an "investment company" under the Investment Company Act of 1940.

(x) Each Guarantor has operated at all times in compliance with the requirements of all applicable laws and all orders, writs, conditions of participation, contracts, standards, policies, injunctions, decrees, and Governmental Approvals applicable to it or its properties, except where noncompliance individually or in the aggregate could not reasonably be expected to result in a material adverse effect (as determined by the Administrative Agent).

(xi) Each Guarantor makes the representations set out in Sections 9.18, 9.21 and 9.22 of the Credit Agreement as if set out in full herein.

(xii) The Guaranteed Obligations are unconditional and irrevocable.

(xiii) There are no actions, suits or proceedings before any court, tribunal or governmental body pending or, to its knowledge, threatened (i) with respect to any of the transactions contemplated by this Guaranty or (ii) against or affecting any Guarantor or any of its assets or properties which if adversely determined might reasonably be expected to have a material adverse effect on any Guarantor's ability to perform hereunder.  No Guarantor has been charged with any violation of or default under any statute, decree, rule, regulations, writ or order of any court or any administrative order.

**Section 19.** No course of prior dealings between the parties, no usage of the trade, and no parol or extrinsic evidence of any nature, shall be used or be relevant to supplement or explain or modify any term used in this Guaranty. This Guaranty and all obligations of each Guarantor hereunder shall be binding upon the successors and assigns of such Guarantor, and shall, together with the rights and remedies of Guaranteed Parties hereunder, inure to the benefit of Guaranteed

[Joint and Several Guaranty]

Parties and their respective successors and assigns.  The invalidity, illegality or unenforceability of any provision of this Guaranty shall not affect the validity, legality or enforceability of any other provision of this Guaranty.  None of the terms or provisions of this Guaranty may be amended, waived, altered, modified, or terminated except by an instrument in writing signed by the party against which enforcement of such amendment, waiver, alteration, modification or termination is sought.

**Section 20.**    All notices hereunder shall be in writing (including facsimile transmission) and shall be sent to the applicable party at its address set out below or at such other address as such party may, by written notice received by the other parties, have designated as its address for such purpose.  Notices sent by facsimile transmission shall be deemed to have been given when sent; notices sent by mail shall be deemed to have been given three Business Days after the date when sent by registered or certified mail, postage prepaid; and notices sent by hand delivery or overnight courier service shall be deemed to have been given when received.

<u>Guarantors</u>

TAYLOR WOODS

c/o Urban Commons, LLC
10250 Constellation Blvd., Suite 1750
Los Angeles, CA 90067
Attention: Taylor Woods
Telephone: 213-260-9111
Electronic Mail: taylor@urban-commons.com

HOWARD WU

c/o Urban Commons, LLC
10250 Constellation Blvd., Suite 1750
Los Angeles, CA 90067
Attention: Taylor Woods
Telephone: 213-260-9111
Electronic Mail: taylor@urban-commons.com

URBAN COMMONS, LLC

c/o Urban Commons, LLC
10250 Constellation Blvd., Suite 1750
Los Angeles, CA 90067
Attention: Taylor Woods
Telephone: 213-260-9111
Electronic Mail: taylor@urban-commons.com

<u>Administrative Agent</u>

MIRAE ASSET SECURITIES & INVESTMENTS (USA), LLC

[Joint and Several Guaranty]

3701 Wilshire Boulevard
Suite 880
Los Angeles, CA 90010

Attention: Sam Hong
Telephone: +1 323 986 6901
Facsimile: +1 213 262 3810

THIS WRITING AND THE CREDIT AGREEMENT CONTAIN THE COMPLETE, FINAL AND EXCLUSIVE LENDERS' STATEMENT OF THE TERMS OF THE AGREEMENT AMONG GUARANTORS, LENDERS AND ADMINISTRATIVE AGENT RELATING TO THIS GUARANTY AND GUARANTORS' COVENANTS.

THIS IS THE GUARANTY AS DEFINED IN THE CREDIT AGREEMENT.

THIS GUARANTY SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF VALIDITY, CONSTRUCTION AND ENFORCEMENT.

EACH GUARANTOR HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY LEGAL ACTION, SUIT, OR PROCEEDING ARISING OUT OF OR IN ANY WAY IN CONNECTION WITH THIS GUARANTY MAY BE INSTITUTED OR BROUGHT IN THE COURTS OF THE STATE OF NEW YORK, IN THE COUNTY OF NEW YORK, OR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AS ADMINISTRATIVE AGENT MAY ELECT, AND BY EXECUTION AND DELIVERY OF THIS GUARANTY, EACH GUARANTOR HEREBY IRREVOCABLY ACCEPTS AND SUBMITS TO, FOR ITSELF AND IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE NON-EXCLUSIVE JURISDICTION OF ANY SUCH COURT, AND TO ALL PROCEEDINGS IN SUCH COURTS.  EACH GUARANTOR IRREVOCABLY CONSENTS TO SERVICE OF ANY SUMMONS AND/OR LEGAL PROCESS BY REGISTERED OR CERTIFIED UNITED STATES AIR MAIL, POSTAGE PREPAID, TO EACH GUARANTOR AT ITS ADDRESS SET FORTH ABOVE, SUCH METHOD OF SERVICE TO CONSTITUTE, IN EVERY RESPECT, SUFFICIENT AND EFFECTIVE SERVICE OF PROCESS IN ANY SUCH LEGAL ACTION OR PROCEEDING.  NOTHING IN THIS GUARANTY SHALL AFFECT THE RIGHT OF ADMINISTRATIVE AGENT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR LIMIT THE RIGHT OF ADMINISTRATIVE AGENT TO BRING ACTIONS, SUITS OR PROCEEDINGS IN THE COURTS OF ANY OTHER JURISDICTION.  EACH GUARANTOR FURTHER AGREES THAT FINAL JUDGMENT AGAINST IT IN ANY SUCH LEGAL ACTION, SUIT OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION WITHIN OR OUTSIDE THE UNITED STATES OF AMERICA, BY SUIT ON THE JUDGMENT, A CERTIFIED OR EXEMPLIFIED COPY OF WHICH SHALL BE CONCLUSIVE EVIDENCE OF THE FACT AND THE AMOUNT OF THE LIABILITY.

BY ITS SIGNATURE BELOW, EACH GUARANTOR HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR

[Joint and Several Guaranty]

COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS GUARANTY, THE LOAN DOCUMENTS, OR THE TRANSACTION CONTEMPLATED HEREBY OR THEREBY.

BY ITS SIGNATURE BELOW, EACH GUARANTOR HEREBY IRREVOCABLY WAIVES ANY DEFENSE IN ANY ACTION COMMENCED BY ADMINISTRATIVE AGENT OR LENDERS UNDER THIS GUARANTY THAT ANY OTHER GUARANTOR OR ANY OTHER PERSON IS A NECESSARY OR INDISPENSABLE PARTY.

\* \* \*

[Joint and Several Guaranty]

**IN WITNESS WHEREOF**, Guarantors have executed this Guaranty as of the day and year first above written.

**TAYLOR WOODS**

By: _____
DocuSigned by: [signature]
F6FB8013F9C44F0...

**HOWARD WU**

By: _____
[signature]

**URBAN COMMONS, LLC**

By: _____
Name: Howard Wu
Title: Manager

SINGAPORE/#5472.3